## SAMUEL HAVEN *et ux. versus* ABRAHAM HILLIARD *et al.,* Executors.

A proceeding in the court of probate, seeking the proof and allowance of a will, is a "suit at law," within the meaning of *St.* 1792, *c.* 32, which enacts that "in all suits at law" wherein any parish &c. is a party, or interested in the event of the suit, any inhabitant of such parish &c. shall be admitted as a competent *witness,* provided he has no other interest therein than as an inhabitant of such parish &c. and is not otherwise legally disqualified.

The purpose of the *St.* 1783, *c.* 24, in requiring a will of lands to be attested by three "credible" (or competent) witnesses, was not to determine who should be competent, but to require those as attesting witnesses, who should be competent according to the laws in force for the time being.

Thus, a subscribing witness to a will made subsequently to the enactment of *St.* 1792, *c.* 32, wherein a legacy was bequeathed to a parish of which he was a member, but in which legacy he had no other interest than as a member of the parish, was *held* to be, by force of that statute, a "credible" witness, within the *St.* 1783, *c.* 24.

THIS was an appeal from the decree of the judge of probate, allowing a certain instrument as the last will of John Foster.

On a case stated it appeared, that Foster died at Cambridge, on the 1st of November, 1836, leaving an instrument purporting to be his last will, dated the 22d of April, 1836, and attested by Sidney Willard and Samuel Newell, as two of the three subscribing witnesses.

The instrument purported to dispose of both real and personal estate, and contained the following clauses : —

"Item : I give, bequeath and devise to the said First Parish in Cambridge twelve hundred dollars, in trust, for the sole purpose of supporting the unitarian ministry in said parish, and I hereby require said parish to vest that sum in some safe, permanent and productive fund or funds, or property, and to pay the net income or interest thereof annually, toward the support of said ministry in said parish : and it is my will, that, if the

said fund shall be used by said parish for any other or different purpose than the support of said unitarian ministry, that it shall thereby be forfeited to the trustees herein mentioned of the residue of my estate as herein defined, and the net interest or income thereof be used by them for the purpose for which I have herein and hereby appointed them."

" Item : I give, bequeath and devise to the trustees herein after named and appointed, and the survivors of them, and their successors in said trust, the sum of fifteen hundred dollars, in trust, the net interest or income thereof to be distributed annually for ever, by the trustees thereof for the time being, according to their best skill and judgment, for the relief and assistance of the poor in said parish, which sum of fifteen hundred dollars I order to be paid by my executors herein after named, in one year after my decease, to said trustees, for the purpose aforesaid ; who are directed to commence said distribution of said net income or interest thereof, at the expiration of two years from my decease."

At the time of the execution and attestation of the instrument, Willard and Newell were members of the parish above mentioned, taxed and taxable as such, the parish being a territorial parish, and having existed as such from the first settlement of the town of Cambridge. Since the appeal was claimed, Willard and Newell have ceased to be members of the parish, by having filed with the clerk thereof a written notice declaring the dissolution of their membership, pursuant to the Revised Stat. *c.* 20, § 4 ; but they both continue to attend public worship in the meetinghouse of the parish, and neither of them has connected himself with any other religious society. Willard owns a pew in the meetinghouse. Owning a pew does not constitute the owner a member of the parish. Pews are not, and never have been, taxed in the parish. The salary of the present minister is $ 1200 *per annum* ; which is paid partly from the income of the ministerial and church funds, and the rents of pews in the meetinghouse and of other real estate owned by the parish, and partly from a tax annually assessed on the members of the parish. The proportion of the salary derived from taxation, is yearly diminished, in consequence of the regular increase of the

abovementioned funds, by the yearly addition of a certain part of the income to the capital, and in a few years, in the ordinary operation of that system, no parish taxes will be requisite, in order to pay the salary.

The instrument in question was presented for probate, in January 1837, and an exception taken by the appellants, to the competency of the two witnesses above named, was overruled by the judge, and the instrument was approved and allowed as and for the last will and testament of Foster. From this decree Haven and his wife appealed, and assigned as a reason, that the instrument was not attested by three credible witnesses.

The case was argued in writing.

*F. Hilliard*, for the appellants, contended that Willard and Newell were not "credible" (or competent) witnesses, within *St.* 1783, *c.* 24, § 2, because at the time of the attestation and probate of the will, they were members of the First Parish in Cambridge, and consequently interested witnesses, by reason of the legacy to that parish.

The *St.* 1792, *c.* 32, for admitting inhabitants of a parish, &c. to be witnesses " in all suits at law " wherein the parish may be a party or interested in the event of the suit, has not changed the law in relation to the attestation of wills. 1. Because the act did not intend any such change. In passing it the subject of the attestation of wills was not in the contemplation of the legislature. *Commonwealth v. Knapp*, 9 Pick. 514. — 2. If this statute applies to the attestation of wills, it repeals a part of the statute of wills, by implication. But repeals by implication are things disfavored by law. *Proctor v. Newhall*, 17 Mass. R. 92 ; *Canal Co. v. Rail Road Co.* 4 Gill & Johns. 1 ; *Gregory's case*, 6 Coke, 19 *b ; Lyn v. Wyn*, Judgments by Orl. Bridgm. 127. — 3. Take the case of a will made before, but presented for probate after, the enactment of the statute of 1792. At the making of the will the witnesses were incompetent, and consequently the will was void ; *Hawes v. Humphrey*, 9 Pick. 350 ; and to apply this statute to it would set up a devise which was wholly void. — 4. The inhabitant of a parish is by this statute admitted to be a competent witness, provided he has no other interest in the

suit than as an inhabitant " and is not otherwise legally disqualified." Now the attesting witness of a will *is* " otherwise disqualified," by the very fact that by virtue of the statute of wills he is disqualified to *attest.* — 5. The proceeding for the probate of a will, is not " a suit at law." 3 Tomlin's Law Dict. 535 ; Williams's Law Dict. *voc. Suit. Action ;* Co. Lit. 285 ; 1 Tomlin's Law Dict. 28 ; Impey's Pr. K. B. 9 ; Lee's Dict. of Practice, 1, 11 ; Revised Stat. *c.* 90, § 1. — 6. In suits at law in which public corporations are parties or interested, there might be a total deficiency of evidence and consequent failure of justice, if the members were not permitted to testify, the facts to be proved being in general chiefly or exclusively in their knowledge. But for the attestation of wills, disinterested witnesses may always be called. *Davis* v. *Allen*, 12 Pick. 467 ; *Starr* v. *Starr*, 2 Root, 303 ; Gordon's Dig. (Pennsyl.) 280. — 7. The statute of 1792 is construed strictly. *Odiorne* v. *Wade*, 8 Pick. 519. — 8. Whether this statute might by remote implication be made to embrace the attesting witnesses of a will or not, strong reasons why it should not are to be found in the striking points of distinction, with reference to situation, duty, mode of examination, and credit, between this class of witnesses and those who merely testify in court. The statute relates *expressly*, only to testifying witnesses. It can therefore be applied to *attesting* witnesses, if at all, merely because they afterwards become testifying witnesses. But this may never happen ; as if they die before the testator, or become infamous, or insane, the will may be estab lished upon proof of their handwriting. Again ; attesting witnesses to a will are not subject to the same checks as witnesses testifying in court. They are not under oath, and cannot be cross-examined or discredited. The statute, in relaxing the rule of the common law as to the competency of a testifying witness, still leaves his credit impeachable ; but by extending the statute to the attestation of wills the security arising from the previous incompetency is removed and no other remains Again ; the statute of 1783, in requiring three credible witnesses, refers chiefly to the *making*, not to the *proof*, of a will. The object was to prevent frauds as well as perjuries ; to protect the testator, when debilitated by age or infirmity, from the

2

practices of the crafty and designing. *Hawes* v. *Humphrey*, 9 Pick. 356, 357. One other important distinction between attesting and merely testifying witnesses is, that the former give their *opinions*, the latter testify only to *facts*. 1 Stark. Ev. 74. Prejudice and interest will not make a man see and hear what was not done or said, but they will strongly bias the *judgment*, and an *opinion* formed under these influences will be formed once for all, and not change when they are removed. Moreover, a witness does not expose himself to punishment by giving a false opinion, because it cannot be proved that it *was* false.

It will probably be argued, that by "credible witnesses," in the statute, were meant persons, not merely such as were credible or *competent* by the law in force at the time when this statute was enacted, but such as might afterwards be competent by virtue of any subsequent statute. This argument admits of several answers. 1. The statute of 1792 is not applicable to the attesting witnesses of a will, because, as has been shown, very different principles and considerations apply to the two classes of attesting and testifying witnesses. The same reason may be offered for not giving to the statute of 1783 any such contingent prospective meaning as that above suggested. — 2. There is no principle pertaining to the construction of statutes, by which the proposition can be sustained, that the settled meaning of words in a statute, clearly ascertained and understood when it was passed, can be afterwards altered by a subsequent statute not referring to it. And when the statute of 1783 speaks of "credible" (or competent) witnesses, we must conclude that it relates only to competent witnesses in the legal sense at the time of the passage of the act. *Commonwealth* v. *Knapp*, 9 Pick. 514. — 3. The "credible" witnesses required by the statute are persons endued with certain qualities of character; which, when the statute was passed, were the same qualities as were required in a testifying witness; and the statute is to be construed as if it had said expressly, that wills should be attested by *disinterested* witnesses. The statute of 1792 does not make the members of a parish *disinterested*, but *competent* though *interested* *Cornwell* v. *Isham*, 1 Day, 35, note.

*1 Hilliard* and *Greenleaf,* for the appellees. The *St.* 1792, *c.* 32, must be regarded merely as declaratory of the common law of this country, rather than as introducing a new rule of evidence. *Connecticut* v. *Bradish,* 14 Mass. R. 296 ; *Commonwealth* v. *Worcester,* 3 Pick. 462 ; *Merchants' Bank* v. *Cook,* 4 Pick.405 ; *Eustis* v. *Parker,* 1 N. Hamp. R. 273 ; *Canning* v. *Pinkham,* 1 N. Hamp. R. 353 ; *Congr. Society* v. *Perry,* 6 N. Hamp. R. 164 ; *Cornwell v. Isham,* 1 Day, 35 ; *Fuller* v. *Hampton,* 5 Connect. R. 416 ; *Falls* v. *Belknap,* 1 Johns. R. 486 ; *Bloodgood* v. *Overseers of Jamaica,* 12 Johns. R. 285 ; *Trustees of Watertown* v. *Cowen,* 4 Paige, 510 ; *Ex parte Kip,* 1 Paige, 613 ; *Corwein* v. *Hames,* 11 Johns. R. 76 ; *Wells* v. *Lane,* 8 Johns. R. 462 ; *Gilpin* v. *Vincent,* 9 Johns. R. 219 ; *Overseers of Orange* v. *Overseers of Spring-field,* 1 Southward, 186 ; *Shenck* v. *Corshen,* 1 Coxe, 189 ; *Justices of Burlington* v. *Fennimore,* 1 Coxe, 190 ; *State* v. *Davidson,* 1 Bailey, 35 ; *Jonesboro* v. *M'Kee,* 2 Yerger, 167.

But if that statute altered the law, it is nevertheless applicable to attesting witnesses of a will. The present proceeding is a " suit at law," within the meaning of that statute. *Parker* v. *Harcourt,* 5 Esp. 251 ; *Ball* v. *Oliver,* 2 Ves. & Beame, 96 ; *Sheffield* v. *D. of Bucks,* Dick. 74 ; Bac. Abr. *Executors &c., E* 13, *pl.* 1, 2 ; *Wallis* v. *D. of Portland,* 3 Ves. 500, 502 ; *23 Hen.* 8, *c.* 9 ; *24 Hen.* 8, *c.* 12 ; 3 Bl. Comm. 67 ; Com. Dig. *tit. Prerog. D,* 13, 14, 15, 38, 39 ; *tit. Prohibition, B, G* 18 ; *Newell* v. *Weeks,* 2 Phillim. 224 ; *Clark* v. *Wright,* 2 Pick. 67 ; Revised Stat. *p.* 517, 518. The statute of 1783 merely requires that devises of land be attested by three credible (meaning competent) witnesses ; leaving the question of competency to be settled by the general law. If it is to be restricted to that class of persons only, who were considered competent when the act passed, then all who do not believe in a state of punishment after this life, are still excluded ; for such was then the law ; and a universalist, though competent in every other case, cannot attest a will. And the rule, if just in regard to this statute, would be equally so in regard to others. For example, the statute of 1792 must be taken to refer to such " suits at law " as might *then* be maintained, and as admitting parishioners to be competent witnesses in no others. *United States* v. *Fisher,* 2 Cranch, 358.

*C. G. Loring* replied.

SHAW C. J. drew up the opinion of the Court. The single question presented for the consideration of the Court, in this case, is, whether the will of John Foster deceased, was duly attested by three credible witnesses, pursuant to the statute in force at the time the will was executed, requiring it to be so executed, in order to give it the effect of passing real estate The circumstances supposed to render two of the witnesses, Willard and Newell, disqualified, on account of interest, are detailed in the statement of facts agreed by the parties. The will contained a bequest to the first parish in Cambridge, of one thousand dollars, in trust to invest that sum and apply the income annually towards the support of the unitarian ministry in that parish. Willard and Newell were at the time members of that parish, taxed and taxable there, of whom one owned a pew and the other did not. Other circumstances are stated, which are not material to the present inquiry.

Whether these circumstances did give the witnesses, as members of this parish, an interest, in the establishment of this will, being a gift to the parish in trust for themselves, is a question which the Court have not thought it necessary to decide, and they wish to be considered as giving no opinion respecting it. But the Court are of opinion, that by force of the statute of 1792, *c.* 32, these persons, having no other interest than that of corporators, or members of the parish, were good witnesses within the statute regulating the execution of wills. That act provided, that a will disposing of real estate, should be attested and subscribed in the presence of the devisor, by three or more credible witnesses, or else should be utterly void and of no effect. This was taken from the previous English statute on the same subject, which had received a judicial construction in the English courts. It is obvious, that if the word "credible" were used in a loose popular sense, as descriptive of persons of good moral character and reputation in fact, and personally worthy of belief, it would be far too indefinite to be the ground of a practical rule, and would leave each will, and indeed each devise in every will, to be established or overthrown, according to the estimate which a jury might form of the moral qualities and consequently of the general credit due to the testi-

mony of either or all of the witnesses. It will be recollected, that by the English practice the due execution of the will is tried, in each case, when the claim to a devise under it is drawn in question ; and this in the common law courts, and in the ordinary course of proceeding in a court of common law, by a court and jury ; whereas here, the validity of the will, embracing its due execution and attestation, is tried once for all, in the probate court, — with the aid of a jury, in the Supreme Court of Probate, in certain cases, — and such trial is conclusive of the question of due execution, as well for all devises of real estate, as for other purposes. Considering how indefinite the word " credible " is, if used in the general sense, courts were at first inclined to consider it thrown out, not as prescribing a legal qualification, but as a caution to those, who might be called on to weigh and judge of the credit actually due to the witnesses. It is now useless to allude to the elaborate discussions upon this subject, and especially to the conflicting opinions of Lord *Mansfield* and Lord *Camden*, so ably supported on both sides by learning and force of talent ; they are familiar to every lawyer.

It was after these discussions had taken place, that our statute of 1783 was passed. The judicial construction put upon it, was stated by *Parsons* C. J. in *Amory* v. *Fellowes*, 5 Mass. R. 229. In the opinion of the Court it was used in the sense of *competent* and " those witnesses are credible, whom the law will trust to testify to a jury, who may afterwards ascertain the degree of credit they have." The same position is stated in *Hawes* v. *Humphrey*, 9 Pick. 361, in which Mr. Justice *Wilde*, speaking for the Court, says, " The witnesses are competent, and therefore credible within the meaning of the statute ; for I think it clear, that the word " credible " is used in the statute in the abstract sense, as denoting persons, capable of obtaining credit. Now every person who is allowed to give testimony in a court of justice, may be believed ; otherwise it would be absurd to allow him to testify."

Assuming then, that the word *credible*, in this statute, is used to designate a person entitled to be examined in a court of justice, subject, as in all other cases, to have his actual credit weighed and considered by the court or jury called to consider

it, then the statute of 1783 is to be construed as if this descrip-
tion were substituted for the word " credible." It is to be
expounded, as if it had provided, that the will must be attested
by three persons competent to be examined as witnesses, in a
court of justice, upon the question whether the will was duly
executed and by a person of sound and disposing mind. This
is confirmed by the 13th section of the statute, which provides,
that if any person shall have attested a will, to whom a bequest
is made, and shall have been paid &c. before he shall give his
testimony concerning the execution of such will, such person
shall be admitted as a witness to the execution, his credit being
subject to the consideration of the court or jury as in other
causes. Though there is a manifest inconsistency between this
and the 11th section, which declares all such bequests void,
arising obviously from a misapprehension of the terms of 25
*Geo.* 2, *c.* 6, from which this is manifestly taken, yet it indi-
cates clearly the understanding of the legislature, that the
species of credibility, requisite to make a witness capable of
attesting, was very different from that title to actual credit
which he might have with the court and jury, when he should
come to testify. He might, from bad character or otherwise,
be entitled to very little credit, at the time of testifying ; still,
if he was not incompetent at the time of attestation, the will
might be well attested, although the fact of execution and the
fact of attestation by such witness, denied by himself, were
proved by other competent and satisfactory evidence.

Having thus arrived at the meaning and judicial construction of
the term " credible witness," and found that it is one who at the
time of attestation would be entitled to be heard and examined
as a witness, in a court of justice, on the question of such exe-
cution, we are to learn from the rules of common law, or
statute provisions, what qualities render a witness competent or
otherwise. In general, one is incompetent, who is rendered
infamous by conviction of an infamous offence, or who is inter-
ested in the subject matter of the inquiry. This, however, is a
very general description, and is subject to many exceptions. But
without stating them, the result is, that if a person be so inter-
ested as to render him incompetent in other cases of judicial
inquiry, at the time of attestation, (unless by the force of some

gift or bequest in the will, which is declared void by the 11th section of the act,) whether such interest is created by statute or by a rule of the common law, or whether by a statute made prior to this or by one made after it, seems wholly immaterial. The statute of 1783 was prospective ; it looked to the future ; it intended to declare, that thereafterwards, when a will of lands should be executed, it should be done in presence of three persons so situated that in case they should live, and not afterwards become incapacitated by infamy, after acquired interest, or otherwise, from testifying to the execution of such will, they should be competent so to testify before the proper tribunal to consider and decide that question. They were to be thus qualified, that they might become testifying witnesses, to prove the will.

Such being the purpose and operation of the statute of 1783, it becomes necessary to see how it is affected by the statute passed ten years afterwards, *St.* 1792, *c.* 32, entitled an act for admitting inhabitants of towns and certain other corporations, to be witnesses. It provides, that in all suits at law, whether of a civil or criminal nature, wherein any town, precinct, or parish, may be a party or interested in the event of the suit, any inhabitant of such town or parish, shall and may be admitted as a competent witness, provided he has no other interest than as such inhabitant, and is not otherwise legally disqualified, any law, usage or custom to the contrary notwithstanding.

A question was made, but not much pressed, whether a proceeding in the probate court, seeking the proof and establishment of a will of lands, is a suit at law within the meaning of this statute ; but of this there can be no doubt. The case of a suit in the probate court is within all the reasons, upon which the statute was founded, and is also within the letter. It is a suit in which adverse parties are seeking to establish their legal rights, both to real and personal property. In the case already cited for another purpose, *Amory* v. *Fellowes*, a question arose, whether a *dedimus potestatem* from the probate court, had not issued too soon, it being before the will proposed to be proved had been filed. Mr. Chief Justice *Parsons*, who was distinguished for his accuracy and precision in the use of legal language, says, " in the probate court, when the *lis con-*

*testata* is upon the execution of a will, the will, as the founda tion of the *suit*, must be present in court, before a *dedimus* can issue. The offering of the will for probate is the institution of the suit." It is a suit, by which all titles to real estate by devise are to be settled ; it may be tried by jury or otherwise, according to circumstances ; it proceeds on the 'egal rules of evidence, and must be conducted and determined upon legal principles. We can entertain no doubt that it was intended to extend to all judicial controversies, in which legal rights are drawn in question.

This statute then affects the operation of the former, by modifying and to some extent, altering the rule, by which, before this, a witness would be rendered incompetent, and therefore not a credible witness. It is immaterial whether this be called a repeal of the prior act or not. So far as it changes and affects its operation, it is a repeal in express terms, by declaring inoperative any law, usage or custom, which would stand in the way of its full operation. But perhaps it is better not to consider it a repeal, but rather a modification of the subject matter on which the former law is to operate. The former law provided, that a will should be executed before three persons, competent to come into court and testify to its execution ; if the latter act determines who shall be competent, both have their full effect. The first act does not confine the admissibility to those who were then by law qualified to testify and so were deemed credible ; but it extends to those who should be so, at the time of the execution, then future. Suppose the statute of 1805, for the distribution of the estates of intestates, had so modified the preëxisting law, as to exclude brothers' and sisters' children from taking by right of representation equally with surviving brothers and sisters, of one who had died without children or father. Suppose such person had made a will, and a nephew, the child of a deceased brother, was an attesting witness. By the law as it stood, when our statute of wills was passed, and as it now stands, such nephew would have a direct interest, because by defeating the will and establishing an intestacy, he would take a share in the devised estate. Is it not very clear that the operation of the statute of wills would have been altered and modified in its operation and effect by the statute of distributions ?

So as tne law stands now, the right of representation among the descendants of brothers and sisters, extends only to children. Of course grand-nephew swould be wholly disinterested, and would therefore be competent, and by force of the statute, credible witnesses. But supposing the statute of distributions were now altered so as to admit lineal descendants of brothers and sisters, by right of representation, indefinitely. Grand-nephews would then be interested in establishing the intestacy of a grand-uncle, dying without issue, and to that end in defeating his will. They would, of course, by the operation of this law, be placed in such a condition as to be interested, and incompetent, and therefore not credible witnesses, within the statute. Yet it could hardly be said, with strict correctness, that such modification of the statute of distributions had repealed in any respect the statute of wills. The former continues to have its full, natural and legal operation, according to the plain intent of the legislature. The result is, that it was not those, who by the law as it then stood, were interested and incompetent, and of course not credible, that the statute intended to exclude ; but those who should be so, when called to attest a will, and afterwards to testify respecting its execution. It was not the purpose of this statute to determine who should be competent and credible, but to require those as attesting witnesses, who should be credible by being competent, according to the laws in force, for the time being.

It may be proper here to take notice of an argument derived from the case of *Hawes* v. *Humphrey*, 9 Pick. and which was a good deal relied upon. The argument stands thus ; the Court there went into a considerably minute consideration of the facts and circumstances, to show that the witnesses had no disqualifying interest, all of which would have been unnecessary and immaterial if the construction now put upon the statute of 1792 is sound, and therefore that case is an authority against such construction. That case seems to have been well considered and is certainly a good authority, for all the principles decided by .t. But it is obvious that the construction of this st.tute could not come in question in that case, and the cas has no bearing upon it, by implication or otherwise. In tha. case the witnesses were objected to on the ground of being in-

Haven
v.
Hilliard.

terested as inhabitants of South Boston, within the territory of which the proposed school and church were to be established by the donations made in the will. But South Boston was not a town or parish and had no corporate character of any sort. It was a part of the city, defined by territorial limits. The witnesses, if benefited at all by the will, were not to be benefited as being members of any corporation, but as being included in the description of persons, to whose benefit the bequest would enure. The statute therefore did not apply to them.

A strong distinction is made in the learned argument for the appellants, between attesting witnesses, and testifying witnesses. It is undoubtedly true, that those who attest a will, may, through various contingencies, never be called to testify. They may die or go abroad, become infamous or interested. But the object and purpose of the statute is to require attesting witnesses, in order that they may afterwards become testifying witnesses, and it is their qualification in the latter capacity, which constitutes the rule and measure of their qualification in the former. The question is, what was the meaning and intent of the legislature in requiring the attestation of *credible* witnesses. No statute, and no usage or rule of common law, fixes the credibility or competency of an attesting witness ; but as the leading object and purpose of attestation is to provide for obtaining the testimony of those who may afterwards be called to prove the will, and as the law does accurately fix the qualifications of those who may be admitted to give testimony in matters of judicial controversy in courts of law, the inference is very strong that the legislature referred to the established rule of competency for testifying, to ascertain who were credible as attesting witnesses. It intended to make those who were competent to testify on the trial, if qualified in like manner, credible witnesses of the execution. On any other construction the term " credible witnesses," as designating those required to attest the execution of the will, would be without definite meaning.

But again, it was contended, that the statute of 1792 did not remove the disability and disqualification arising from interest, but only declared that inhabitants of towns and parishes, in suits in which such towns or parishes were interested, should

be admitted as competent witnesses, that is, they were to be admitted as if they were competent witnesses, though interested. If the objection turns upon the mere form of the expression " as competent," we think it is a construction much too narrow and strict, to meet the intent of the legislature. If admitted as competent, they are thereby made competent, as if the language had been, " shall be deemed, or considered competent." Then taken in connexion with the proviso, that such witness has no other interest than as an inhabitant of such town or parish and is not otherwise legally disqualified, it is equivalent to declaring that such person's corporate interest shall not alone be deemed an interest, which renders the witness incompetent. It therefore, in its legal operation, determines that such a corporate interest shall not prevent a witness from being competent, and, of course, *credible* within the statute of wills.

The Court are therefore of opinion, that whether the witnesses, Willard and Newell, had any interest or not in the establishment of this will, whether if they had any it was direct and certain, or remote and contingent, it was an interest which they had only as parishioners and members of the religious society to which, by the will, a pecuniary legacy was given, and therefore, as they were not otherwise disqualified, they were competent witnesses, and were rightly admitted as such by the probate court.